# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| DAVID SUTHERLAND,<br><br>　　　Petitioner,<br><br>v.<br><br>YOLANDA RAWL,<br><br>　　　Respondent. | )<br>)<br>)<br>)<br>) Case No. CV411-107<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

David Sutherland petitions this Court for 28 U.S.C. § 2254 habeas relief.[1] Doc. 4. Because his claims are without merit, it should be denied.

## I. BACKGROUND

Indicted in state court for violating O.C.G.A. § 16-12-126 ("Interference With Safety or Traffic Control Device"); O.C.G.A. § 16-8-2 ("Theft by Taking"), and O.C.G.A. § 16-7-20 ("Possession of Tools for the

---

[1] Because he is on parole, the Court **GRANTS** the motion of his parole officer, Yolanda Rawl, to intervene as his custodian within the meaning of 28 U.S.C. § 2254 Rule 2(a). Doc. 17. To that end, the Court has amended the above caption to reflect that result. The Clerk shall do likewise for the docket, and all subsequent filings shall conform.

Commission of a Crime"), doc. 23-1[2] at 64-65, 74-75, Sutherland -- represented by public defender June Fogle, *id.* at 71, 74 -- pled guilty on an "open-ended" plea.[3] *Id.* at 67; 69-70, 75. That plea fetched him prison time plus parole in exchange for the state's promise to drop a second indictment for theft by taking. Doc. 23-1 at 67-68, 74, 76-77. As will be detailed below, Sutherland was caught cutting down and selling as scrap railroad signal wires owned by CSX Transportation.

At his guilty-plea hearing, the judge conducted a voluntariness inquiry and Sutherland replied that he understood that he faced a maximum of eleven years in custody. *Id.* at 77, 80. He "talked to [Fogle] thoroughly about any defenses [he] might have available to [him] and the facts of these cases and what evidence [he] might offer [in defense]. . . ." *Id.* at 80. He signed a written waiver of his trial and pretrial rights, including the right to subpoena witnesses. Doc. 23-3 at 26. He also

---

[2] All documents referenced here have been "E-filed." The Court is thus using the electronic screen pagination inserted onto the top of each page by the Court's E-filing software. It may not always align with the original, printed-page pagination.

[3] This meant that Sutherland was "prepared to enter a guilty plea and rely on the Court's judgment as to sentencing." Doc. 23-1 at 74-75; *see also* doc. 23-3 at 13 (Fogle explaining to him, at his state habeas evidentiary hearing, that she did not ask the prosecutor about "First Offender" treatment, for which Sutherland otherwise qualified, because it was "an open-ended plea. There is no agreement with the district attorney.").

affirmed his signature on and acceptance of a written "voluntariness transcript." *Id.* at 27. He then pled guilty. Doc. 23-1 at 80.

A CSX employee, George Mullis, supplied part of the plea's factual basis. CSX used wire-based communications. When CSX suffered a signal failure, Mullis investigated and found that someone had been cutting and stripping railroad wires for scrap-copper sales to a salvager. *Id.* at 82-86. That someone was Sutherland: "[W]e actually caught him in the [nearby] woods with the wiring and there was [sic] pliers, ropes, different things used to cut the wires. That's when I found Mr. Sutherland hiding behind a tree." Doc. 23-2 at 1.

Sutherland had been seen at wire-theft locations before, too. *Id.* In fact, Mullis had previously confronted and warned him about the dangers of cutting railroad wires. *Id.* at 2-3. Mullis had also gone to a local metal scrap dealer and "was given a receipt with [Sutherland's] picture ID on it and the wire that I had picked up." *Id.* at 3.

But Sutherland simply would not stop thieving. On May 2, 2007, CSX investigator William Thomas Moore encountered him and another man while they were "pulling wire from signal poles into a wooded area, stripping wire, and they were arrested by [local police]." *Id.* at 7. At the

3

hearing Moore produced scrap dealer receipts showing that Sutherland had sold scrap copper before that date, to which Fogle objected. *Id.* at 11-13. The judge reassured her that he would not consider them. *Id.* at 13. Fogle then pointed out, in mitigation, that Sutherland admitted to his offense and by that point had been sitting in jail for nearly 15 months. *Id.* at 15.

Stressing the danger to the public (cut signal wires can cause errant trains), and the fact that Sutherland had been previously warned about stealing the railroad's wiring, the judge sentenced him to 12 months on the theft by taking charge, plus five years (to run concurrently) on the "interference" charge, plus a probated five-year sentence on the possession-of-tools charge. *Id.* at 16-17. "So, it's a ten, do five, sentence." *Id.* at 17.

Fogle immediately requested "first offender" treatment given Sutherland's lack of a felony record. *Id.*

THE COURT: Denied.

MS. FOGLE: He'd like to withdraw his plea at this time.

THE DEFENDANT: I'm withdrawing this plea at this time, Your Honor.

THE COURT: Too late.[4]

*Id.* at 18 (footnote added); *see also* doc. 23-3 at 19. Fogle moved for reconsideration but Sutherland, after opting to represent himself, withdrew it. Doc. 23-3 at 15. Nor did he appeal. Doc. 23-1 at 18.

But he did seek state habeas relief. There he insisted that he timely withdrew his guilty plea before his sentence was imposed, but the hearing transcript simply failed to reflect that. Doc. 23-1 at 22; doc. 23-3 at 3, 30-31. And, he accused Fogle of providing him with ineffective assistance of counsel (IAC). Doc. 23-3 at 3, 30-31. After sentence was imposed, he had asked her to file a motion to withdraw his plea but she declined because, as she would later explain, it would have been legally frivolous. *Id.* at 19 ("I do believe the judge had pronounced sentence

---

[4] As has been explained:

> Pursuant to OCGA § 17-7-93(b), an accused person has an absolute right to withdraw a plea of guilty and plead not guilty at any time *before* "judgment is pronounced." Orally announcing the sentence constitutes such a pronouncement under that Code section and ends that absolute right. After pronouncement of sentence, a ruling on a motion to withdraw a plea of guilty is within the discretion of the trial court.

*Brown v. State*, 261 Ga. App. 448, 449 (2003) (footnote omitted; emphasis added); *accord Storch v. State*, 276 Ga. App. 789, 792 n. 11 (2005).

before he tried to withdraw the plea.").[5] Finally, Sutherland complained that the state had jail records showing he was locked up when the offenses were committed, yet failed to acknowledge this at his guilty-plea hearing but instead knowingly advanced contradictory and thus "perjurious" testimony against him. Doc. 23-1 at 23.

The state habeas judge accepted the guilty-plea transcript's accuracy and found that Sutherland "did not attempt to orally withdraw his guilty plea until *after* the sentencing court had pronounced its sentencing and denied [his] request for First Offender status." Doc. 23-2 at 27 (emphasis added). Additionally, he cited *Garrett v. State*, 284 Ga. 31, 31 (2008), and *Strickland v. Washington*, 466 U.S. 668 (1984), in applying the burden Sutherland was required to meet: show that Fogle's errors were deficient and the reasonable probability that, but for those errors, he would not have pled guilty but instead would have insisted on going to trial. Doc. 23-2 at 28. Concluding that Sutherland failed to

---

[5] As the state habeas judge would later rule, the motion would have been untimely because by that point it was beyond the trial court's "term." Doc. 23-2 at 28; *see also Storch*, 276 Ga. App. at 792 (trial court lacked jurisdiction to consider defendant's motion to withdraw his guilty plea to aggravated assault with intent to commit rape, where defendant did not file motion until after term of court in which he entered his plea had expired and, moreover, also filed notice of appeal on same day that he filed motion). Sutherland admitted that he did not ask Fogle to file a guilty-plea withdrawal motion until October 6, 2008, doc. 23-3 at 31, and it is undisputed that that was beyond the trial court's term. *Id.* at 31-34.

6

meet that burden, the judge ruled that Fogle's refusal to file what would have been an untimely and frivolous plea-withdrawal motion was reasonable. *Id.*

Sutherland also faulted Fogle for failing to investigate the arresting detective who "perjured" himself. Doc. 23-3 at 21 (Sutherland's habeas hearing testimony on this point). This would have been a defense Sutherland says he did not pursue, but instead pled guilty, just to get out of jail and thus be able to "investigate" that perjury. Doc. 23-2 at 29.[6]

---

[6] At his state habeas evidentiary hearing Sutherland also testified that he had other defenses, including, for example, that the railroad did not even own the property on which he was accused of thieving copper wire. Doc. 23-3 at 23 ("They don't own the material they claim was stolen."). He says he spelled all that out to Fogle, who did nothing to develop his defense but simply met with him perfunctorily. Feeling "abandoned" and believing that he would have to sit in jail for months more if he fired Fogle, he felt he had "no choice" but to plead guilty on the hope of receiving First Offender treatment. *Id.* at 23-25. The habeas judge asked him why he did not simply refuse the plea offer. Sutherland explained:

> I know it. I'd been in jail a year. If I'd fired Ms. Fogle, it might take three to six months to get another attorney. And that attorney would have had to find out everything going on. That could have took [sic] another year. Ms. Fogle didn't do anything. An attorney that didn't represent me. As far as I'm concerned, after six hearings that I had the hearings for, and she didn't show up. I was abandoned.
>
> Now, I didn't know how to go about to fire her and get another one, but I knew it would take some time. Especially in front of [the sentencing judge]. A year. The actual case started, as I said by taking a misdemeanor. But they, what I called tacked -- the [prosecutor] tacked on charges and made it a safety issue. Once they've done that, Ms. Fogle should have done more. I mean, I had about two seconds. I mean I just lost it. I knew I wasn't guilty, but I had to take the hit. I had to do something to get out of jail to prove the case, to prove perjury.

7

In denying this petition, the habeas judge noted Sutherland's own admission, during the habeas hearing, that he rolled the dice and was simply unhappy with the result. Petitioner also admitted that he signed

---

*Id.* at 25.

In other words, Sutherland believes that he can swear that yes, he committed the acts supporting the offense, and that yes, he was voluntarily admitting guilt, but then later tell the courts (including this one) that he "didn't really mean it" and thus he *lying under oath* the entire time. And that, in turn, is "justified" because he was innocent -- he just needed to get out of jail to gather up exculpatory evidence. And then, once he would "prove" he was innocent, this would cleanse away his lying sin.

This amazingly self-delusional thread drives his petition. Attempting to bring him back down to earth, the state asked him, toward the end of his habeas evidentiary hearing:

Q. So you felt that it was in your interest to enter the guilty plea on June 13th?

A. That's the only thing I knew to do.

Q. Okay. Because you have some agenda that you weren't necessarily saying you were guilty, although on the record you did.

A. Yes.

Q. You wanted to plead guilty because it was in your best interest.

A. It was the only thing I knew to do.

Q. You did know that a guilty plea is the same as a conviction? Did the judge tell you that -- as if you had gone to trial and lost?

A. I think he did at the time.

*Id.* at 32. Alas, that effort was to no avail. Sutherland's § 2254 petition here travels on the same delusion -- that he could "ruse-plead" guilty and point to such deception as "justification" for finding Fogle ineffective and thus obtain § 2254 relief here. Doc. 1 at 5.

8

and understood a written document waiving his trial and pretrial rights (including the right to subpoena witnesses). Doc. 23-3 at 26. He also affirmed his signature on and acceptance of a written "voluntariness transcript." *Id.* at 27. Finally, he agreed that he understood his waiver and that his guilty plea was voluntary. *Id.* at 27-28.

Hence, the court concluded, his plea was voluntary, he waived all of his pre-plea claims, Fogle did not provide IAC, and his claim about the prosecutor's jail-records at best presented "a factual dispute over whether or not [Sutherland] was positively identified at the scene of the crime." Doc. 23-2 at 29. Put another way, that claim was waived by pleading guilty. And to the extent that Sutherland raised a *Brady* claim, *see Brady v. Maryland*, 373 U.S. 83 (1963), he presented *no* evidence that the district attorney withheld any exculpatory evidence.[7] *Id.* at 29-30.

---

[7] Courts use a similar standard to that applied in ineffectiveness claims in determining whether failure to disclose relevant and material evidence was prejudicial. *See United States v. Rafferty*, 296 F. App'x 788, 795-96 (11th Cir. 2008) (government's suppression of allegedly exculpatory *Brady* evidence of interview with third-party bank account holder, explaining that most funds passing through account benefitted someone besides defendant, did not deprive him of due process at his trial for conspiracy to commit securities fraud, conspiracy to commit mail fraud and wire fraud, and two counts of wire fraud by diverting investors' funds, since there was no real probability of different outcome of trial if evidence had been admitted in defendant's favor, due to remaining witnesses and other evidence before jury to support defendant's fraudulent funneling of funds to other accounts).

## II. GOVERNING STANDARDS

The state habeas court here issued a written opinion following an evidentiary hearing. Doc. 23-2. Rulings on fully adjudicated issues must "be given the benefit of the doubt," *Felkner v. Jackson*, ___ U.S. ___, 131 S. Ct. 1305, 1307 (2011) (quotes and cite omitted), which means this Court cannot disturb them unless they

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court*[8] of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis and footnote added).

This is a highly deferential, "difficult to meet" standard to overcome. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786

---

[8] "Clearly established" means a Supreme Court holding, not dicta, and a holding that exists at the time of the state court decision that applies the legal principle at issue. *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1399 (2011); *Thaler v. Haynes*, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); *Hunt v. Comm'r, Ala. Dept. of Corrs.*, 666 F3d 708, 720 (11th Cir. 2012); *Bowles v. Sec'y for Dep't of Corrs.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Lower court opinions, even if directly on point, will not suffice. *Bowles*, 608 F.3d at 1316.

(2011); *Cullen v. Pinholster*, \_\_ U.S. \_\_, 131 S. Ct. 1388, 1398 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87, quoted in *Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) (en banc). This Court also must presume state court factual determinations to be correct; petitioners must rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

Sutherland thus must show that the state habeas court unreasonably applied the *Strickland*-based precedent to his claim. Before the state courts, then, he had to first establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688). To do that he had to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.[9]

---

[9] "[T]he constitutional standard in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime, requires only 'reasonable competence in

If he showed that,[10] then he also had to demonstrate that any deficient performance by Fogle resulted in prejudice -- "that there is a reasonable probability that, but for counsel's errors, [Sutherland] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Also "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id*. And "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker." *Id*. at 59–60 (quoting *Strickland*, 466 U.S. at 695).[11]

Before this Court he must overcome the second (§ 2254(d)) layer, which materially increases his burden: "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' [so] when the two

---

representing the accused.'" *Kerr v. Thurmer*, 639 F.3d 315, 328 (7th Cir. 2011) (quoting *Premo v. Moore*, 562 ___ U.S. ___, 131 S. Ct. 733, 742 (2011)).

[10] Successful claims here often involve an attorney's bad advice, for example, in transmitting and advising the defendant about the prosecution's plea-bargain offers. *See, e.g., Kerr*, 639 F.3d at 331.

[11] For that matter, claims about the deprivation of constitutional rights that occur prior the entry of a guilty plea are foreclosed by the plea itself. *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

apply in tandem, review is 'doubly' so." *Harrington,* 131 S.Ct. at 788 (cites omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Lamontagne v. Sec'y, Dept. of Corrs.*, 433 F. App'x 746, 749 (11h Cir. 2011) (applying double deference standard in an IAC guilty plea case). On top of all that, courts accord extraordinary deference to trial counsel in the area of plea bargaining. *Premo,* 131 S. Ct. at 741 ("strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage").

## III. ANALYSIS

Sutherland's petition, doc. 1, which rehashes the above-described state habeas claims and then, by way of a later filing, seeks to add new but procedurally defaulted claims, doc. 7,[12] is jaw-droppingly frivolous.

---

[12] "A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999). Since Sutherland's later claims (e.g., "unlawful search and seizure," doc. 7 at 1) are defaulted, the Court need not consider them on the merits unless he can establish cause and prejudice excusing his default, or establish his actual innocence of the crimes. *Lynn v. United States*, 365 F.3d 1225,

He has not even come close to showing § 2254(d)-unreasonableness, much less any error on the merits. He simply ignores the fact that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). He *admits* his declarations under oath were just a flat-out lie, and somehow it makes sense for him to urge the courts to play along with it, make an IAC finding, and thus help him undo his guilty plea, so he can then be free to round up exonerating evidence and prove his innocence.

Of course, no one even gets out of the starting gate with a lie. His plea, therefore, runs into the following analytical brick wall, which itself is backed by the § 2254(d) deference layer: "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be

---

1232 (11th Cir. 2004). He has not even attempted that. Hence, they are all defaulted.

14

upheld on federal review." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc) (quotes and cite omitted); *Trumpler v. Sec'y, Dep't of Corrs.*, 2012 WL 404776 at * 6 (M.D. Fla. Feb. 8, 2012). As set forth *supra*, Sutherland does not dispute any part of his plea, except for his "I really didn't mean it" claim and his claim that the transcript does not accurately reflect the timing of his plea withdrawal. As for the transcript claim, he has simply failed to overcome the presumption of factual correctness to the state habeas judge's factual resolution of that issue against him. No other claim surmounts the guilty-plea waiver wall here.

## IV. CONCLUSION

Accordingly, David Sutherland's 28 U.S.C. § 2254 petition must be **DENIED**. Doc. 1. The Court also **DENIES** his motion to amend, as it is raises demonstrably frivolous, not to mention new and thus unexhausted/procedurally defaulted claims. Doc. 19. Likewise **DENIED** as frivolous is his motion for default judgment,[13] doc. 21, as is his motion for an Order directing the state to respond to his petition. Doc. 18. The Court **GRANTS** Yolanda Rawl's Motion to Intervene, doc. 17, and the Clerk shall amend the docket per note 1 *supra*.

---

[13] "There is no default in habeas corpus. *Gordan v. Duran*, 895 F.2d 610 (9th Cir. 1990)." *Roach v. Vail*, 2010 WL 148677 at * 2 (W.D. Wash. Jan. 14, 2010).

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  8th  day of March, 2012.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA